**FORRESTER & WORTH, PLLC**
3636 NORTH CENTRAL AVENUE, SUITE 700
PHOENIX, ARIZONA 85012
602.258.2729 — MAIN
602.271.4300 — FAX
S. CARY FORRESTER (006342)
BYRON H. FORRESTER (033877)
SCF@FORRESTERANDWORTH.COM
BHF@FORRESTERANDWORTH.COM
COUNSEL FOR DEBTORS

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>**GV HOSPITAL MANAGEMENT, LLC**,<br>Debtor. | Chapter 11<br>Jointly Administered<br>Case Nos.: 4:17-bk-03351<br>4:17-bk-03353; and<br>4:17-bk-03354 |
| In re:<br>**GREEN VALLEY HOSPITAL, LLC**,<br>Debtor. | |
| In re:<br>**GV II HOLDINGS, LLC,**<br>Debtor. | **ORDER ESTABLISHING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS** |
| THIS FILING APPLIES TO:<br>☒ ALL DEBTORS<br>☐ GREEN VALLEY HOSPITAL, LLC<br>☐ GV HOSPITAL MANAGEMENT, LLC<br>☐ GVII HOLDINGS, LLC | |

This matter came before the Court on October 12, 2017 at the hour of 2:30 p.m. for hearing on *Debtors' Motion to Approve Procedures for the Sale of Substantially All of Debtors' Assets* [DE 450] (the "**Sale Procedures Motion**"). Appearances are as

noted on the record. The hearing did not conclude on October 12, 2017 and was continued to October 13, 2017 at the hour of 1:30 p.m. and then to October 16, 2017, at the hour of 8:00 a.m. Based upon the Sale Procedures Motion, the arguments of counsel, and the entire record before the Court, and good cause appearing,

**THE COURT FINDS AND CONCLUDES** as follows:

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334;

B. This is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2);

C. The relief requested in the Sale Procedures Motion is necessary and in the best interests of Debtors and their estates;

D. The limited objections filed by Green Valley Medical Investments LLLP ("**GVMI**") [DE 471] and the Official Committee of Unsecured Creditors (the "**Committee**") [DE 470] are overruled, except as otherwise set forth below, and the objections filed by SQN Asset Finance (Guernsey) Limited ("**SQN**") and Cerner Corporation ("**Cerner**") have been resolved through the terms of this Order; and

E. To the extent that the Court has included language in this Order that was not acceptable to Lateral, the Court finds and concludes that Lateral's position was not reasonable.

Based upon all of the foregoing,

**IT IS HEREBY ORDERED ADJUDGED AND DECREED** as follows:

1. The Sale Procedure Motion is granted as provided herein;

2. The following procedures shall govern the sale (the "**Sale**") of substantially all of Debtors' assets (the "**Assets**"):

**A.     Participation Requirements**

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in the acquisition of one or more of

2

102383604.1
Case 4:17-bk-03351-SHG    Doc 493   Filed 10/16/17   Entered 10/17/17 08:20:49   Desc
Main Document    Page 2 of 17

the Assets (a "**Potential Bidder**") must deliver the following materials to Debtors and their counsel:

(a) An executed confidentiality agreement in form and substance satisfactory to Debtors; and

(b) Its most current audited and latest unaudited financial statements (collectively, the "**Financials**"), or, if the Potential Bidder is an entity formed for the purpose of the Sale, (x) the Financials of the financial sponsor of the Potential Bidder or such other form of financial disclosure as is acceptable to Debtors and (y) the written commitment acceptable to Debtors of the financial sponsor of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the Sale. In the event that a Potential Bidder is unable to provide such Financials, Debtors may accept such other information sufficient to demonstrate to the satisfaction of Debtors that such Potential Bidder has the financial wherewithal to consummate the Sale and provide adequate assurance of future performance under all agreements to be assumed as part of the Sale.

Notwithstanding the foregoing, Lateral SMA Agent, LLC and Lateral GV, LLC (collectively "**Lateral**"), and GVMI shall be entitled to participate in the bidding process or otherwise be considered for any purpose hereunder without compliance with the above requirements.

A "**Qualified Bidder**" is a Potential Bidder whose Financials or other information demonstrate the financial capability to consummate and perform obligations in connection with the Sale and which Debtors determine is reasonably likely to make a *bona fide* offer and would be able to consummate a proposed Sale if selected as the Successful Bidder (as defined below). Debtors will promptly

3

advise each Potential Bidder, Lateral, GVMI, and the Committee in writing of Debtors' determination whether or not each Potential Bidder is a Qualified Bidder. Notwithstanding the foregoing, Lateral and GVMI shall be treated as a Qualified Bidder entitled to participate in the bidding process or otherwise be considered for any purpose hereunder without compliance with the above requirements, provided, however, that if Lateral or GVMI seeks to take an assignment of any executory contract or unexpired lease it will be required to submit sufficient financial information to establish its ability to pay any required cure amount and to provide adequate assurance of future performance under the executory contract or unexpired lease.

### B. Obtaining Due Diligence Access and Sharing of Certain Information

Debtors shall provide each Qualified Bidder reasonable due diligence information as requested, including access to the data room established by Debtors to facilitate the provision of due diligence material to prospective purchasers (the "**Data Room**"). Debtors shall coordinate all reasonable requests from Qualified Bidders for additional information and due diligence access. Any documents provided by Debtors to any Qualified Bidder in response to a due diligence inquiry shall be posted in the Data Room. The due diligence period will end on the Bid Deadline (as defined below). No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline. The due diligence period will end on the Bid Deadline.

In connection with providing information to parties interested in acquiring any of the Assets, Debtors shall not furnish any confidential information relating to Debtors, their businesses, the Assets, or the Sale to any person except a Qualified Bidder. Notwithstanding the foregoing, Debtors shall provide to the Committee,

4

102383604.1
Case 4:17-bk-03351-SHG    Doc 493    Filed 10/16/17    Entered 10/17/17 08:20:49    Desc
Main Document    Page 4 of 17

GVMI, and Lateral any information relating to the qualification of bidders, the valuation of bids, and such other information regarding the Sale process as may be reasonably requested by the Committee, GVMI, or Lateral.

Non-Debtor parties to executory contracts and unexpired leases with Debtors (the "**Executory Contracts and Leases**") may request, in writing, a copy of the information that is provided to Debtors by a Qualified Bidder to demonstrate adequate assurance of future performance by such Qualified Bidder who indicates an intent to take assignment of such executory contract and/or unexpired lease in its Qualified Bid (as defined below). Such requests may be directed to Debtors via Email, c/o S. Cary Forrester, Esq., at scf@forresterandworth.com. Any such requests from non-Debtor parties to Executory Contracts and Leases received on or before October 31, 2017 that provide an electronic mail address where such information may be sent will receive such information via electronic mail on or before November 10, 2017. Any such requests received after October 31, 2017 will be sent to such non-Debtor parties to Executory Contracts and Leases on or before the second business day after receipt of such request by Debtors.

Within thirty days from the entry of this Order, Debtors shall post in the Data Room a form of Asset Purchase Agreement (the "**Purchase Agreement**") for use by Potential Bidders in submitting Qualified Bids.

    **C.**    **Bid Deadline**

The deadline for Qualified Bidders to submit their bids shall be January 5, 2018 at 4:00 p.m. (prevailing Eastern Time) (the **"Bid Deadline"**).

Prior to the Bid Deadline, a Qualified Bidder that desires to make a bid for one or more of the Assets shall deliver written copies of its bid to (i) Debtors, c/o Kaufman Hall & Associates, LLC ("**KHA**"), 5202 Old Orchard Road, Suite N700,

Skokie, Illinois 60077 (Attn: Anu Singh), ; (ii) counsel to Debtors, Forrester & Worth, PLC, 3636 N. Central Avenue, Suite 700, Phoenix, Arizona 85012 (Attn: S. Cary Forrester, Esq.); and (iii) counsel to the Committee, Perkins Coie LLP, 2901 North Central Avenue, Suite 2000, Phoenix, Arizona 85012-2788 (Attn: Bradley A. Cosman). On or before one business day after the Bid Deadline, Debtors shall make copies of all Qualified Bids (as defined below) available to the Qualified Bidders that submitted Qualified Bids and to Lateral and GVMI by posting such Qualified Bids in the Data Room.

### D. Due Diligence from Bidders

Each Qualified Bidder shall comply with all reasonable requests for additional information by Debtors or their advisors regarding such Qualified Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale. Failure by a Qualified Bidder to comply with requests for additional information may be a basis for Debtors to determine that a bid made by such Qualified Bidder is not a Qualified Bid. Notwithstanding the foregoing, Lateral shall not be required to participate in requests for additional information, except as set forth above.

### E. Qualified Bid Requirements

A Qualified Bid must be an irrevocable written offer from a Qualified Bidder and must:

1. State that the Qualified Bidder offers to consummate the Sale pursuant to an agreement that has been marked to show any amendments and modifications to the Purchase Agreement, including price and terms, that are being proposed by the Qualified Bidder; *provided, however*, that if a bidder proposes to acquire Debtors' business through a transfer including a plan of reorganization,

6
102383604.1
Case 4:17-bk-03351-SHG   Doc 493   Filed 10/16/17   Entered 10/17/17 08:20:49   Desc
Main Document    Page 6 of 17

Debtors reserve the right to deem such a bidder a Qualified Bidder despite any non-conformance of the proposed acquisition documentation (such purchase agreement or alternative documentation shall be referred to herein as the "**Marked Purchase Agreement**");

2. Confirm that such Qualified Bidder's offer shall remain open and irrevocable until the closing of the Sale of the relevant Assets to the applicable Successful Bidder or the Next Highest Bidder (each, as defined below);

3. Contain written evidence of approval by the Qualified Bidder's Board of Directors or other comparable governing body of the transaction upon the terms provided in the bid; provided, however, that, if the Qualified Bidder is an entity specially formed for the purpose of acquiring the Assets, then the Qualified Bidder must furnish written evidence, reasonably acceptable to Debtors, of the approval of the contemplated transaction by the Board of Directors or comparable governing body of each of the equity holder(s) of the Qualified Bidder;

4. Enclose a copy of the proposed Marked Purchase Agreement;

5. The Marked Purchase Agreement must specifically identify the assets proposed to be purchased, which may be all or a portion of the Assets;

6. Contain a list of Debtors' executory contracts and unexpired leases related to the Assets that the Qualified Bidder desires to assume and a packet of information, including financial information, that will be provided to the non-Debtor parties to such executory contracts and unexpired leases sufficient to demonstrate adequate assurance of future performance;

7

7. Provide, in the Marked Purchase Agreement, that the Qualified Bidder will pay all cure costs associated with the Executory Contracts and Leases identified for assumption by such bidder;

8. Be accompanied by a wire transfer of a minimum good faith deposit (the "**Minimum Deposit**") in an amount equal to the greater of $100,000 or .25% of the purchase price identified in the Marked Purchase Agreement, which Minimum Deposit shall be used to fund a portion of the applicable purchase price and shall be increased if the Qualified Bidder is selected as a Successful Bidder or the Next Highest Bidder, provided however, (a) that Lateral shall not be required to provide a deposit, and (b) the amount of any deposit required to be provided by GVMI shall be based solely upon the cash component of its Bid;

9. Provide, in the Marked Purchase Agreement, that the sale of the Assets shall close on or before **March 31, 2018**, unless otherwise agreed to by Debtors;

10. Be on terms that are not materially more burdensome or conditional than the terms of the Purchase Agreement;

11. Not be conditioned on obtaining financing or the outcome of any due diligence by the Qualified Bidder;

12. Not request or entitle the Qualified Bidder to any break-up fee, expense reimbursement, or similar type of payment;[1]

---

[1] The form Purchase Agreement will provide for an expense reimbursement. Because Lateral's reasonable fees and expenses will be added to the principal amount of the DIP Loan to the extent provided in the DIP Credit Agreement, there will be no expense reimbursement if the Stalking Horse Bidder (as defined below) is Lateral. As discussed below, such bid protection shall only be available, to the extent approved by the Court, to the Stalking Horse Bidder if one is selected, other than Lateral and GVMI. A Qualified Bidder should therefore remove such provision in submitting a Marked Purchase Agreement.

13. Fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

14. All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the Sale and the construction and enforcement of the Purchase Agreement;

15. In the event that a Stalking Horse Bidder is selected, (i) Debtors shall file with the Court an amended Purchase Agreement, which shall supersede the original Purchase Agreement and shall be used by Potential Bidders in submitting a Marked Purchase Agreement; and (ii) a Qualified Bid shall be required to be in an amount not less than the sum of (1) the Purchase Price (as defined in the Purchase Agreement), plus (2) the Expense Reimbursement (as defined in the Purchase Agreement), if applicable, plus (3) $100,000 (together, the "**Minimum Initial Overbid**"); and,

16. Must contain a cash component sufficient to pay the Success Fee that will be owing to KHA at the closing of the Sale, if any.

A bid received from a Qualified Bidder that meets the requirements set forth above will be considered a "**Qualified Bid**" if Debtors (in their sole discretion, but after consultation with the Committee, GVMI, and Lateral) believe that such bid would be consummated if selected as a Successful Bid (as defined herein). If Debtors receive a bid that is not a Qualified Bid, Debtors may provide the Potential Bidder with the opportunity to remedy any deficiencies. Notwithstanding the foregoing, any full credit bid by Lateral shall be treated as a Qualified Bid.

9

Prior to the commencement of the Auction, Debtors shall determine (in their sole discretion, but after consultation with the Committee, GVMI, and Lateral) which Qualified Bid represents the then-highest or otherwise best bid for the Assets (the "**Initial Bid**").

F.  **Stalking Horse Bidder**

Debtors may enter into an agreement for the Sale of the Assets with a Potential Bidder (such bidder, the "**Stalking Horse Bidder**") prior to the Auction. The following procedures and protections shall apply with respect to a Stalking Horse Bidder:

  i. **Selection of Stalking Horse Bidder**. Debtors shall have authority to select a Stalking Horse Bidder. A party shall be eligible to be designated a Stalking Horse Bidder so long as (i) it enters into a signed Purchase Agreement (which may or may not substantially conform to the Purchase Agreement) by November 22, 2017, (ii) it tenders the Minimum Deposit, (iii) the Committee and Lateral consent to the selection of the Stalking Horse Bidder, or in the event of a dispute, the Court overrules any objection; and (iv) the amount of the Stalking Horse bid is sufficient to pay Lateral in full and contains a cash component sufficient to pay the Success Fee owing to KHA at the closing of the Sale. In the event that Debtors select a Stalking Horse Bidder, the Stalking Horse Bidder shall be deemed to be a Qualified Bidder and to have submitted a Qualified Bid. If no Stalking Horse Bidder has been selected by November 22, 2017 then Debtors shall be authorized and directed to select Lateral as the Stalking Horse Bidder for no less than a full credit bid unless Debtors consent in writing to a lesser amount.

ii. **Bid Protections**. If Debtors consummate an Alternative Transaction (as defined in the Purchase Agreement), either because the Stalking Horse Bidder is not the Successful Bidder at the Auction or otherwise, then the Stalking Horse Bidder, other than Lateral or GVMI, shall be entitled to the following protections (the "**Bid Protections**"): an Expense Reimbursement in an amount equal to the reasonable out-of-pocket costs, fees and expenses incurred by the Stalking Horse Bidder (including fees and expenses of legal, accounting, and financial advisors) in connection with the Purchase Agreement up to the maximum aggregate amount of $200,000, unless otherwise ordered by the Court on motion of any party, which motion the Court will hear on an expedited basis, provided, however, that such Stalking Horse Bidder must provide evidence acceptable to Debtors of the nature and amount of any costs, fees, and expenses, with any dispute in that regard to be resolved by the Court.

### G. The Auction

If Debtors receive more than one Qualified Bid (in addition to the bid of a Stalking Horse Bidder if one is selected) from a Qualified Bidder by the Bid Deadline, an auction (the "**Auction**") will take place on **January 10, 2018 at 10:00 a.m. (Mountain Standard Time)** (the "**Auction Date**") at the offices of Forrester & Worth, PLLC, 3636 N. Central Avenue, Suite 700, Phoenix, Arizona 85012, or such other time and place as Debtors may provide so long as such change is communicated reasonably in advance by Debtors to all Qualified Bidders, the Committee, Lateral, GVMI, and other invitees. If held, the Auction will be conducted openly, and all creditors will be permitted to attend. Bidding at the

11

102383604.1
Case 4:17-bk-03351-SHG    Doc 493    Filed 10/16/17    Entered 10/17/17 08:20:49    Desc
Main Document    Page 11 of 17

Auction will be transcribed or videotaped. If only one Qualified Bid (including the bid of Lateral or a Stalking Horse Bidder, if one is selected) is received by the Bid Deadline for a portion or all of the Assets, the Auction will be deemed cancelled and that Qualified Bid, if it is otherwise accepted by Debtors, will be deemed the Successful Bid for the Assets identified in the Purchase Agreement, subject to any credit bids as provided in Section M below, and Debtors will seek authority from the Bankruptcy Court to consummate the Sale contemplated by the Qualified Bid subject to any credit bids as provided in Section M below.

If an Auction is held, the following rules for its conduct (the "**Auction Rules**") shall be observed:

1. Only a Qualified Bidder who has submitted a Qualified Bid by the Bid Deadline or a credit bidder as provided in Section M below will be eligible to participate at the Auction; *provided, however*, that any party in interest may attend (but not participate in) the Auction if it provides Debtors with written notice of its intention to attend the Auction on or before the Bid Deadline. Such written notice may be sent to Debtors via Email, to S. Cary Forrester, Esq., at scf@forresterandworth.com.;

2. Each Qualified Bidder shall be required to confirm under penalty of perjury that it has not engaged in any collusion with respect to the bidding or the Sale;

3. At the Auction, Qualified Bidders will be permitted to increase their bids. The bidding at the Auction shall start at the purchase price stated in the Initial Bid and then continue in increments as determined by Debtors and announced at the commencement of the Auction;

4. Each Qualified Bidder will be permitted a fair, but limited, amount of time (no more than fifteen minutes, unless otherwise agreed by

12

102383604.1
Case 4:17-bk-03351-SHG    Doc 493    Filed 10/16/17    Entered 10/17/17 08:20:49    Desc
Main Document    Page 12 of 17

Debtors) to respond to the previous bid at the Auction. Bidding at the Auction will continue until such time as the highest or otherwise best offer is determined in accordance with these Sale Procedures;

5. Debtors will, from time to time, in an open forum, advise Qualified Bidders participating in the Auction of the then-highest or otherwise best bid(s);

6. The Auction may be adjourned by Debtors. Reasonable notice of the time and place for the resumption of the Auction will be given to all Qualified Bidders, the Committee, Lateral, GVMI, SQN Asset Finance (Guernsey) Limited ("SQN"), and other invited parties;

7. Immediately prior to concluding the Auction, Debtors shall (a) review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the Sale process and the best interests of Debtors' estates and creditors; (b) determine and identify the highest or otherwise best Qualified Bid (the "**Successful Bid**") and the Qualified Bidder submitting such bid (the "**Successful Bidder**"); (c) determine and identify the next highest or otherwise best Qualified Bid after the Successful Bid (the "**Next Highest Bid**") and the Qualified Bidder submitting such bid (the "**Next Highest Bidder")**; and (d) have the right to reject any and all bids; and

8. Within one business day of the completion of the Auction, the Successful Bidder shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

13

### H. Acceptance of the Successful Bid

Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (defined below), at which time certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that: (i) The Auction was conducted, and the Successful Bidder(s) was selected, in accordance with these Sale Procedures; (ii) the Auction was fair in substance and procedure; (iii) consummation of the Sale contemplated by the Successful Bid(s) will provide the highest or otherwise best value for the Assets and is in the best interests of Debtors and their creditors; and (iv) that, if applicable, the Successful Bidder is a good faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code. Debtors may seek the sale of the Assets through a single transaction or through separate transactions under separate purchase agreements with different purchasers in the event that the combination of such Sales is determined by Debtors, in their sole discretion, but after consultation with the Committee, GVMI, and Lateral, to obtain the highest value for the Assets.

If an Auction is held, Debtors shall be deemed to have accepted a Qualified Bid(s) only when (i) such bid is declared the Successful Bid(s) at the Auction and (ii) definitive documentation has been executed in respect thereof. Such acceptance is conditioned in its entirety upon approval by the Bankruptcy Court and the entry of an Order approving such Successful Bid(s). A full credit bid by Lateral shall be selected as the Successful Bid unless an alternative bid is made that pays Lateral in full in cash at the closing of the sale without contingency.

### I. Sale Hearing

A hearing to consider approval of the Sale to the Successful Bidder(s) will take place on <u>January 17, 2018 at 1:00 p.m. (MST)</u>, or such other time as may be set by the Court, before the Honorable Scott H. Gan, in the United States Bankruptcy

14

Court for the District of Arizona, 38 South Scott Avenue, Courtroom 329, Tucson, Arizona 85701 (the "**Sale Hearing**").

If (i) an Auction is held, (ii) the Successful Bidder(s) and the Next Highest Bidder(s) are selected, (iii) the Bankruptcy Court approves the Sale to the Successful Bidder(s), and (iv) the Sale to such Successful Bidder(s) is not consummated because of a breach or failure to perform on the part of such Successful Bidder(s), then Debtors shall be authorized to consummate a Sale to the Next Highest Bidder(s) without further court order or notice to any other party (other than to Lateral and the Committee). If a sale to (i) the Successful Bidder(s) or (ii) the Next Highest Bidder(s) does not close prior to 60 days following the Sale Hearing, the Debtor shall be authorized and directed to consummate the sale to Lateral for a full credit bid. Debtors specifically reserve the right to seek all appropriate damages from a defaulting Successful Bidder(s) or Next Highest Bidder(s).

### J. Return of Minimum Deposit

Except as otherwise provided in this paragraph with respect to any Successful Bid(s) and any Next Highest Bid(s), the Minimum Deposits tendered under the Sale Procedures shall be returned upon or within one business day after the entry of an order approving the Sale to which such Minimum Deposits relates. The Minimum Deposit(s) of the Successful Bidder(s) shall be held until the closing of the applicable Sale and applied to the applicable purchase price. The Minimum Deposit(s) of the Next Highest Bidder(s) shall be returned upon or within three business days after closing of the applicable Sale to the Successful Bidder(s). If any Successful Bidder(s) fails to close the applicable Sale, such party's Minimum Deposit(s) shall be forfeited to Debtors.

15

### K. Reservation of Rights

Debtors reserve the right to seek approval of the Sale of portions of the Assets through separate Purchase Agreements with different purchasers in the event that the combination of such Sales is determined by Debtors to obtain the highest value for the Assets. Except as specifically provided relating to Lateral's full credit bid, Debtors reserve the right as they may reasonably determine to be in the best interests of their estates (in their sole discretion, but after consultation with the Committee, GVMI, and Lateral) to: (i) Determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Sale Procedures, the Sale Procedures Order, or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of Debtors and their estates; (v) remove some or all of the Assets from the Auction; (vi) enter into one or more stalking horse agreements; (vii) waive terms and conditions set forth herein with respect to all potential bidders; (viii) impose additional terms and conditions with respect to all potential bidders; (ix) extend the deadlines set forth herein; (x) adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; (xi) modify the Sale Procedures as they may determine to be in the best interests of their estates; and (xii) cancel the Auction and/or reject all bids in the event Debtors elect to consummate a refinancing in place of the Sale.

### L. Credit Bidding

Notwithstanding anything to the contrary set forth above, any Qualified Bidder with an allowed secured claim may credit bid for its own collateral, provided that it must pay cash to satisfy any senior liens on that collateral, and

16

provided further that it must pay cash for any Assets included in its bid that do not form a part of its collateral.

**M. Protection of Secured Creditors' Right to Credit Bid for their own Collateral**.

Notwithstanding anything to the contrary set forth above, SQN and any other secured creditor with an allowed secured claim may credit bid at the Auction for its own collateral without (i) becoming a Qualified Bidder, (ii) submitting a Marked Purchase Agreement, (iii) submitting a bid by the Bid Deadline, (iv) submitting a Qualified Bid, (v) submitting a Minimum Deposit, and, in the absence of a Court order to the contrary obtained after notice and opportunity for a hearing (which the Court will set on an expedited basis), (vi) submitting a cash component, (vii) restrictions on bidding, or (viii) any other precondition; and (ix) without deduction or surcharge. Further, to the extent that any Qualified Bidder proposes to buy the collateral of SQN or any other secured creditor with an allowed secured claim as part of its Qualified Bid, such Qualified Bid must include an allocation of the purchase price for such collateral.

**N. Protection of Rights of Lessors and Parties to Executory Contracts**.

Notwithstanding anything to the contrary set forth above, any unexpired lease or executory contract that is not assumed by the Successful Bidder shall be deemed rejected as of the closing of the Sale.

--SIGNED AND DATED ABOVE--

17